**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | |
| vs. | : | Case No. 2:20- CR-126 |
| JESSICA ELIZABETH WISE, | : | JUDGE MARBLEY |
| Defendant. | : | ORAL HEARING REQUESTED |

**SENTENCING MEMORANDUM OF DEFENDANT JESSICA WISE**

**I.     INTRODUCTION**

Defendant Jessica Wise is before the Court for sentencing having entered a guilty plea to one count of Conspiracy to Commit Kidnapping in violation of 18 USC 371.  The Government indicted a group of people for hatching a scheme to kidnap Defendant Avila's ex-boyfriend in an apparent attempt to get him away from his new girlfriend and back together with Avila.  Ms. Wise was guilty of engaging in a discussion of Avila's plot and participating fully in that conversation.  Wise, for her part, was heard to make suggestions as to methods and recommended a person she thought might participate (Co-Defendant Michael Ousley).  The day prior to the first attempted kidnapping Avila contacted Wise to see if she was willing to participate in the kidnapping or to at least, provide contact information for Michael Ousley.  In response, Wise, who was unwilling to participate, only provided the contact information for Michael Ousley.  Much to Wise's surprise, she later learned that not only had the attempt gone forward, but that a second attempt had taken place as well.  Wise's involvement was limited to action taken prior to the first kidnapping attempt and she had no actual participation in either attempt.

The United States Probation Office disclosed the final presentence investigation report on October 5, 2021. The Defendant asks the Court to consider the following information in applying the factors set forth in 18 USC § 3553(a) and respectfully requests that the Court find the applicable guideline range of 60 months is excessive and a downward deviation is appropriate. Defendant Jessica Wise asks the Court for leniency in imposing the sentence in this case. The Defendant requests that the Court impose a sentence in a range significantly less than the determined advisory guideline range, and asks to Court to consider imposing a non-prison sanction.

**II.     GUIDELINE CALCULATION AND UNRESOLVED OBJECTIONS**

In determining the post-*Booker* sentence the Court must (1) accurately compute the guideline range; (2) determine if there is any reason for departure therefrom; and (3) consider the factors set forth in 18 U.S.C. § 3553(a) to arrive at a sentencing that is sufficient, but not greater than necessary, to vindicate Congress' mandate that was codified for sentencing. *United States v. Buchanan*, 449 F.3d 731, 738-39 (6th Cir. 2006) (Sutton, J. concurring).

In the case at bar, the United State Probation Office calculated a criminal history category of I based upon the fact that the Defendant has a criminal history score of 1. (PSR, p. 14 ¶ 67). The Defendant agrees with this portion of the guideline calculation.

The Probation Department calculated the base offense level at 34. The Defendant does not take issue with the base offense calculation of 32. However, the Probation Department also includes a 2-level increase for use of a dangerous weapon in the offense.

Additionally, while the Defendant agrees with the reductions made in ¶ 57 (-4 for minimal participant), and ¶¶ 61-62 (-3 for acceptance of responsibility and timely guilty plea). The Defendant objects to the advisory guideline calculations because the Probation Department

included 2 level enhancement for a vulnerable victim. An objection letter to that effect was forwarded to the Probation Department and included as part of the Final Presentence Investigation Report. As the sentencing guidelines are capped at 60 months as a result of the plea, the Defendant will not spend a lot of time on the unresolved objections. However, it is important to the Defendant that these issues contained in the guideline increases be properly resolved.

### A. §2A4.1(b)(3) Increase for Use of a Firearm or Dangerous Weapon

As set forth in the Sentencing Guidelines in §2A4.1(b)(3), "If a dangerous weapon was possessed, increase by **2** levels." The Defendant objects to the application of §2A4.1(b)(3).

The alleged "dangerous weapon" involved is a taser which others used in furtherance of the failed kidnapping attempts. The crux of the issue turns on whether the taser as used constitutes a "dangerous weapon."

According to Application Note #2 to 2A4.1, "'a dangerous weapon was used' means that a firearm was discharged or firearm or dangerous weapon was otherwise used (as defined in the Commentary to 1B1.1)." A taser does not meet the definition set forth in Application Note E to 1B1.1. In order for an instrument to qualify as a dangerous weapon it must be:

> "capable of inflicting death or serious bodily injury; or (ii) an object that is not an instrument capable of inflicting death or serious bodily injury but (I) closely resembles such an instrument; or (II) the defendant used the object in a manner that created the impression that the object was such an instrument.

A taser is not an instrument capable of inflicting death or serious bodily injury as it is specifically designed not to do so. Further, it is clear that the object itself is what it purports to be—a taser, and not used to created an impression that the kidnapper had a firearm. The use of the taser does not equate to someone wrapping a hand in a towel to make the victim believe they

3

are being held at gunpoint. That simply is not the case we have here.

Accordingly, this enhancement should not be applied.

### B. §3A1.1(b)(1) "Vulnerable Victim"

Essentially the argument that the Government and Probation Office are making is that because the ex-boyfriend of Defendant Avila was engaging in criminal activity by being in the United States illegally and subject to deportation, his self-created criminal status somehow makes him a more egregious victim than any law-abiding United States citizen. This is not the intent of the vulnerable victim provision which is designed to apply to the elderly, child victims, and the physically or mentally infirmed.

Mr. Hernandez was victimized because he was the ex-boyfriend of Defendant Avila who hope to separate him from his new paramour and rekindle their own relationship, not because he was in this country illegally and less likely to report the crime to the police. Finally, he did report this matter to the police.

Although the Advisory Sentencing Guideline range will be set at 60 months due to the statutory maximum, the Defendant urges the Court to conclude that these particular increases do not apply and are not to be a part of the consideration of the 18 USC 3553(a) factors.

### III. FACTORS TO BE CONSIDERED

The Defendant asks the Court to consider the following information in applying the factors set forth in 18 U.S.C 3553(a) and respectfully submits that they warrant leniency in sentencing.

Pursuant to 18 U.S.C. 3553(a), the Court shall impose a sentence sufficient, *but not greater than necessary*, to comply with the purposes set forth in paragraph (2) of the statute.

### A. NATURE AND CIRCUMSTANCES OF THE OFFENSE § 3553(a)(1)

Jessica Wise plead guilty to one count of Conspiracy to Commit Kidnapping in violation of 18 USC 371.

### 1. Minimal Participant in the Offense

Ms. Wise's participation in the conspiracy was largely confined to a conversation on November 22, 2019, which was captured on a Nest video with co-defendant Denia Avila. They discussed in detail Avila's plan to snatch up the ex-boyfriend and bring him to Avila's hotel. The aim of the plot was to separate Juan Hernandez from his current girlfriend and have him return to be with Defendant Avila or go back to Mexico. Ms. Wise had been drinking that evening. At the time, Jessica believed she was engaging a sour grapes how-to-get-over-my-ex conversation, rather than a realistic criminal plot to kidnap Mr. Hernandez. In retrospect, there were indicators that something more concrete was going on here. Ms. Wise has accepted responsibility for her role.

For her part, Ms. Wise did not participate in the first attempted kidnapping on November 25, 2019, and was completely unaware of the second attempted or any of the action leading up to it.

The Government has recognized Wise's very limited role in this conspiracy and included minimal participant as part of the plea agreement. Accordingly, the Pre-sentence Investigation includes a 4-level decrease for being a minimal participant in the offense.

The Defendant's role in the criminal conspiracy weighs greatly in favor of leniency in imposing sentence.

### 2. Abandonment – Lay v. Legal

On November 24, 2019, Defendant Avila contacted Jessica Wise via text message. Avila's message read in relevant part:

5

> "Hey! Can you please just let me know if you're still willing to help tomorrow? I'm just trying to line things up good . . . If you can't, I completely understand, but can you at least give me your friend's number so I can call him and see if he's wanting to go (referring to Michael Ousley).

Wise's response was to only provided Michael Ousley's number. This was the end of her conversations with Avila regarding any kidnapping plot. This was Wise's way of informing Avila she was not going to "help" tomorrow, but was instead, was "at least" providing Ousley's telephone number. In Jessica Wise's mind, at that point, she had declined to go and had abandoned any participation in the scheme. Wise was out.

Unbeknownst to Ms. Wise, the law requires more that a mere cessation of activities in order to constitute the defense of abandonment. Ms. Wise did not contact the police, the alleged victim, or make further efforts to expose or thwart the plot. However, although short of providing a full legal defense, Wise's conduct was enough for Avila to have never contacted Wise any further, aware she was no longer a part of it.

### B. HISTORY AND CHARACTERISTICS OF DEFENDANT § 3553(a)(1)

#### 1. Personal Background and Family History

Jessica Wise is thirty-nine years of age. Her parents divorced when she was an infant. Her biological father is an alcoholic. Her step-father, Michael Boggs, was a supportive parent with whom she is still close. Her mother is another story. Wise's mother never loved Jessica and told her so. Her mother was continually abusive. This created a very difficult and traumatic childhood for Jessica.

#### 2. History of Abuse

Jessica Wise has been the victim of a great deal of trauma in her life.

As a child, Jessica's mother was both physically and emotionally abusive. Child

Protective Services was called in to investigate her mother for abuse on more than on occasion. In 1989, they investigated when Wise (age 6) was found to have bruises on her buttocks from being hit with a wooden board by her mother. This beating was in response to a bed-wetting incident. A vicious cycle emerged, in that Wise would be abused causing her to wet the bed which would cause her mother to further abuse her. In 1991, Child Services was called in again when Wise's mother punched her in the face, stomach and ribs due to bed wetting. The caseworker at the time noted her mother was overly emotional and quick to anger. PSR, p. 16, ¶ 75. Unfortunately, Child Protective Services did little to protect Jessica from these repeated incidents of abuse.

Wise's mother abused her, told her she didn't love her, punished her excessively, and generally traumatized her through her entire childhood. Wise's mother did not perpetrate abuse on her siblings, only her.

Other family incidents have caused her pain and trauma. She had a live-in cousin commit suicide when she was age 15. Later, her paternal grandparents, who were supportive of her when she was young, refused to have any contact with her because she has biracial children.

As is often the case, as a result of low self-esteem and other factors, a woman who was abused as a child ends of with an abuser as an adult. Ms. Wise has a history of abusive relationships with men. The worst of these was Monta Clayborn. Clayborn was "mentally, physically, and sexually abusive." PSR, p. 18, ¶ 83. The abuse lasted from 2003 to 2007. In the filing of protection orders and an incident where Clayborn held a butcher knife to her throat, threatened repeatedly to kill her, and then raped her. Wise had two children with Clayborn. He later served 10 years for racketeering as part of a criminal gang.

### 3. Mental Health and Substance Abuse

Ms. Wise suffers from persistent depression, anxiety, and, understandably, PSTD.  She has received on-going treatment and counseling.   Due to previous adverse side effects from psychiatric medication, she had been self-medicating with marijuana prior to her involvement in this case.  She has complied with counseling and ceased using marijuana.  She is awaiting an appointment with the psychiatrist to re-address the use of medication which she is more willing to try again.  She could benefit from substance abuse treatment, along with the mental health counseling, moving forward.

### 4. Employment

Jessica Wise has a good stable job.  She is currently employed full-time as a forklift operator for Magnetic Springs Water Company making $16 per hour.   She has been there since July of this year, and her employer is favorably impressed with her work.  They are aware of her current legal situation and are willing to continue her employment.  Jessica looks forward to continue working in this position for a solid and respected company.

She previously had a great job, which she also enjoyed, at Worthington Industries.  Her work was as a full-time press operator for $17.80 per hour.  Unfortunately, when news of this indictment broke, she was terminated from the position in August of 2020.  She was unable to find anyone to hire her until July of 2021.

### 5. Family Ties and Financial Responsibilities

Ms. Wise is the mother of four children, one who is special needs.  Her two boys are ages 20 and 16.  Ian lives with her step-father Michael Boggs.  Her son has special needs.  As he weighs nearly 300 pounds, Mr. Boggs, frankly, is the only one large enough to physically deal with him. Wise is very involved in Ian's life personally and financially.  Although he resides with Boggs, Wise is primarily responsible for parenting duties.

Her son Trent and her two girls reside with her. Emily is 18 years of age and Alyssa is 14. She is the sole provider and caretaker for her children. She is particularly dedicated to trying to ensure her daughters have a better childhood than hers, and is extremely distraught that she has jeopardized her daughters' well-being as a result of this situation.

Two letters of support are attached hereto. Exhibit A is from her father Terry Wise. Exhibit B is from her close friend Jessica Berry. It is easy to see from the letters provided by the family and friends that she has good, supportive relationships.

4. **Educational Background**

Ms. Wise attended Norwayne High School through the 12th grade. She was one credit short of qualifying for graduation. She went on the complete her education by obtaining a GED that summer. She further attended Ohio Institute of Health Careers where she earned a diploma for medical assisting.

5. **Lack of Criminal Record**

The Defendant's lack of criminal record weighs in favor leniency in imposing sentence. She has one criminal history point for a single conviction for an offense that occurred in 2011 into 2012. She completed five years of probation for the offense. The only condition she was unable to fully comply with was making the whole amount of restitution. She is a good candidate for probation.

6. **Acceptance of Responsibility and Genuine Remorse**

The Defendant has entered a guilty plea and feels "terrible for the victims and the fear they must have felt after the kidnapping attempt." PSR, p.11 ¶45. She is embarrassed and ashamed at her participation in this conspiracy. *Id.*

C. **SERIOUSNESS, RESPECT FOR LAW, AND JUST**

**PUNISHMENT § 3553(a)(2)(A)**

The sentence imposed by this Court should reflect the seriousness of the offense, promote respect for the law, and provide just punishment. The offense of conspiracy to commit kidnapping, in and of itself, is undoubtedly serious. The Defendant's particular participation and subsequent cessation, would be served by any range of sentences in this case. When addressing just punishment, the Defendant submits this Court should consider the various kinds of punishment that she has already suffered. The Defendant lost the best paying job she ever had, and was unable to find work for a year. The Defendant asks the Court for leniency so she can continue to work and provide for her children, having finally found excellent employment again.

**D.  DETERRANCE AND PROTECTION OF PUBLIC §3553(a)(2)(B), (C)**

It is clear from the facts and circumstances of this case that any sentence Ms. Wise were to receive would provide adequate deterrence and protect the public from future crimes from this offender. Ms. Wise, given this unique set of circumstances and her lack of criminal record, any sentence this Court chooses to impose would protect the public from future crimes of this Defendant because of the remote chance that she would ever be involved in any criminal offense.

**E.  GUIDELINE RANGE §3553(a)(4)**

The United States Probation Department has calculated the advisory guideline range to be 60 months. The Defendant simply urges the Court not to sentence her within that calculated advisory guideline range and instead, consider a non-prison sanction or significantly lesser range.

**F.  AVOID UNWARRANTED SENTENCING DISPARITIES § 3553(a)(6)**

The Court is required to consider the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 USC § 3553(a)(6).

10

No co-defendant in this case is similarly situated to this Defendant. All others in the conspiracy were actually involved in attempting to kidnap these individuals. Ms. Wise was not. Her limited and different level of participation does not have an impact on disparate sentences, no matter how lenient the sentence.

IV. **CONCLUSION**

Based upon the foregoing and all the facts, circumstances, and applicable law, the Defendant asks that this Court deviate significantly from the advisory guideline range and impose a non-prison sanction upon the Defendant in lieu of imprisonment. If the Court believes that a sentence of imprisonment is required, the Defendant urges the Court to impose a significantly lower sentence than the guideline, perhaps a year and a day.

Respectfully submitted,

/s/ Ermel R. Luckett, Jr.
Ermel R. Luckett, Jr. (0041373)
24 North High Street
Columbus, Ohio 43215
(614) 221-9665
eluckett@luckett-law.com

Attorney for Defendant Jessica Wise

**CERTIFICATE OF SERVICE**

I hereby certify that a true and accurate copy of the Sentencing Memorandum was electronically served upon Jessica Knight, Assistant United States Attorney, Office of the United States Attorney, 303 Marconi Blvd. Columbus, Ohio 43215 this 1st day of November, 2021.

/s/ Ermel R. Luckett, Jr
Ermel R. Luckett, Jr. (0041373)
Attorney for Defendant Jessica Wise